UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRYANT HARRIS,  )<br>)<br>Petitioner,  )<br>)<br>v.  )<br>)<br>UNITED STATES OF AMERICA,  )<br>)<br>Respondent.  ) | No. 06 C 4335<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Petitioner's, Bryant Harrris's, *pro se* motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.

On September 16, 2003, Harris was charged by indictment with one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). On December 3, 2003, Harris filed a Motion to Quash Arrest and to Suppress Evidence Illegally Seized ("Motion to Suppress"), seeking to suppress the gun that gave rise to Count 1. On February 2, 2004, an evidentiary hearing was held on Harris's Motion to Suppress. At the suppression hearing, Chicago Police Officer Patrick Thelan testified that while conducting surveillance, he saw three buyers separately approach Harris, engage in a brief discussion, and hand him money. Harris pocketed the money and yelled, "One time!" to Lawrence Pettis. The buyer then walked over to Pettis, who removed a plastic strip from under a brick, tore off a piece of the strip for the buyer, and replaced the remainder of the strip back under the brick. Officer Thelan called for backup; and upon their arrival, Harris and Pettis were detained.

After Harris was placed in the backseat of a squad car, Officer Thelan read Harris his *Miranda* rights. At that point, Harris volunteered that he could not go back to jail and offered to

produce a gun if Officer Thelan would let him go. Harris explained that there was a gun in a blue shoe in the apartment he shared with his mother. Officer Thelan, the back-up officers, and Harris drove to the apartment, where Harris's mother signed a written consent to search the apartment. The officers recovered a pistol inside a man's blue shoe.

Harris testified at the suppression hearing that he was drinking and smoking cigarettes by himself on a friend's porch when police appeared and arrested Pettis. Harris was aware that Pettis was selling drugs nearby, but he was not involved in the sales nor had any conversations with Pettis. The police officers proceeded to arrest Harris, and Officer Thelan told Harris that they received a call about a man with a gun. Officer Thelan threatened Harris that he would plant five bags of crack cocaine on Harris unless he gave up the gun. Harris responded to the threat that a gun could be found at his mother's house. Harris believed that Officer Thelan had "tricked" him into disclosing the gun.

On cross-examination, Harris admitted that after the police found the gun, he was taken to the police station, where a Bureau of Alcohol, Tobacco and Firearm agent, Christopher Labno, prepared a two-page, written statement for Harris's signature. Before Harris signed the statement, Agent Labno again gave Harris his *Miranda* warnings, which Harris acknowledged and waived. Harris testified that no one forced him to sign anything at any time. The Court denied Harris's Motion to Suppress, crediting Officer Thelan's testimony over Harris's testimony.

On June 22, 2004, Harris was charged by a second superseding indictment with one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and one count of conspiracy to possess with intent to distribute and to distribute a controlled substance in violation of 21 U.S.C. § 846.

At Harris's jury trial, Officer Thelan repeated his suppression-hearing testimony; and a back-up police officer corroborated Officer Thelan's version of the events. Agent Labno also testified about the written statement he obtained from Harris. Agent Labno testified that he and Officer Thelan interviewed Harris after Harris signed a *Miranda* waiver. Agent Labno wrote a statement based on the information provided by Harris. Harris made some corrections to the statement, initialed the corrections, and signed the statement.

In the statement, Harris stated that the police "caught me and my friend at his drug spot – where he sells drugs – at 3819 W. Ohio." Harris told police officers that he could get a gun if it would help him out, adding: "The police caught us at Lawrence's drug spot; and because I did not want to go to the penitentiary, I told Officer Thelan about a gun I had at home[.]" Harris stated that he had the gun in a blue shoe at the place he rents with his mother at 803 South California. Earlier on the day that he was arrested, he bought the gun for $50 from a girl named "Poochie" and planned to use it strictly for protection.

On July 7, 2004, Harris was convicted by a jury of unlawful possession of a firearm by a felon. Harris was found not guilty of a conspiracy to possess with intent to distribute and to distribute a controlled substance.

On September 29, 2004, Harris was sentenced to a term of imprisonment of 120 months. During the sentencing hearing, the Court acknowledged the then-pending question regarding the constitutionality of the Sentencing Guidelines in light of the *United States v. Booker* case pending before the Supreme Court. The Court did not award a two-point enhancement for obstruction of justice in light of the question raised by *Booker*. Based on the Court's review of the Sentencing Guidelines and the presentence investigation report, Harris was sentenced to 120 months'

3

incarceration. The Court also noted that the sentence of 120 months was being imposed based on the statutory maximum sentence based on Harris's criminal history and the egregiousness of Harris's conduct.

On October 5, 2004, Harris appealed his conviction to the Seventh Circuit Appellate Court. On appeal, Harris argued that the evidence at trial was insufficient to support his conviction and that the gun entered into evidence should have been suppressed because it was recovered only after he was forced to give an involuntary statement as to its location. On November 21, 2005, the Seventh Circuit affirmed Harris's conviction.

Harris raises several arguments in his present motion: (1) ineffective assistance of trial counsel for failing to argue that Harris was entrapped by a government witness (the police officer) into producing the gun for his freedom;[1] (2) ineffective assistance of appellate counsel because appellate counsel abandoned Harris's argument that the police lacked probable cause to arrest him; (3) ineffective assistance of appellate counsel for failing to file his appeal *in forma pauperis*; (4) ineffective assistance of appellate counsel for failing to challenge his sentence on the basis that the Sentencing Guidelines are advisory, not mandatory; and (5) "a jury instruction violates due process if there is a reasonable likelihood that the jury understood the instruction to allow conviction without proof beyond a reasonable doubt."

Collateral relief pursuant to 28 U.S.C. § 2255 is only available where there was "an error of law that is jurisdictional, constitutional, or constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994),

---

[1]Harris raises this same argument in two separate grounds in paragraphs 14C and 14D of his motion.

*quoting Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1992). The district court must review the record and draw all reasonable inferences in favor of the Government. *See Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992). However, Harris filed this petition *pro se*; therefore, his petition is entitled to a liberal reading. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Ineffective assistance of counsel claims not raised on direct appeal are not procedurally defaulted. *See Massaro v. United States*, 123 S. Ct 1690, 1694 (2003) (*Massaro*). Claims of ineffective assistance of counsel are reviewed under the two-prong test delineated in *Strickland v. Washington*, 466 U.S. 668 (1984) (*Strickland*). Under this test, a defendant must demonstrate both: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defendant. *See Strickland*, 466 U.S. at 688.

The deficiency prong requires a defendant to demonstrate that the representation he received was objectively unreasonable considering all of the circumstances. Counsel's conduct is strongly presumed to satisfy professional standards. *See Strickland*, 466 U.S. at 688-89. Strategic decisions by counsel are not second-guessed on review. *See United States v. Ruzzano*, 247 F.3d 688, 697-98 (7th Cir. 2001). "A reviewing court may only consider those acts or omissions of an attorney that are not classifiable as an attorney's tactics." *United States v. Dyer*, 784 F.3d 812, 817 (7th Cir. 1986). A challenged action is generally considered sound strategy when a competent attorney might have taken the action in the particular case. *See United States v. Norwood*, 798 F.2d 1094, 1100 (7th Cir. 1986).

To demonstrate actual prejudice, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Strickland*, 466 U.S. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 696.

Harris argues that his trial counsel was ineffective for failing to argue that he was entrapped into producing the gun. While Harris identifies his argument as entrapment, the defense of entrapment does not apply as that defense requires government inducement of the crime and a lack of predisposition on the part of the defendant to engage in criminal conduct. *See United States v. Theodosopous*, 48 F.3d 1438, 1444 (7th Cir. 1995). Instead, Harris appears to be arguing that his trial counsel failed to raise the argument that his statement regarding his possession of a gun was involuntary because it was based on the promise of freedom by the police officer, not that the government induced him to commit the crime of being a felon in possession of a weapon. This interpretation is also consistent with Harris's argument on appeal that the gun should have been suppressed because it was the fruit of Harris's involuntary statements.

Harris's first ground for ineffective assistance of counsel fails because Harris has failed to demonstrate counsel's performance was deficient. For Harris's involuntariness argument to have succeeded before the trial court, the court would have had to credit Harris's suppression-hearing testimony and discredit Officer Thelan's testimony. The Court would also have to discredit Harris's written statement in which he acknowledged that he offered the gun and that he was not threatened

or promised anything in return for his statement. The voluntariness of the statement was further corroborated at trial where Officer Thelan repeated the same testimony and Agent Labno's testimony further corroborated Officer Thelan's testimony.

In light of the record set out above, trial counsel's failure to raise this argument is considered sound strategy; and Harris cannot demonstrate that the strategic decision was unreasonable. Furthermore, Harris cannot demonstrate that the outcome of the trial would have been different had trial counsel made this argument.

Harris next argues that appellate counsel was ineffective for failing to argue lack of probable cause for his arrest. This issue was fully litigated in the trial court, including an evidentiary hearing. In ruling on Harris's Motion to Suppress, the Court rejected Harris's testimony and found Officer Thelan's testimony credible. The Court specifically found that Officer Thelan's testimony was "clear and uuimpeached" and corroborated by other evidence. In light of the Court's specific findings after an evidentiary hearing, appellate counsel's decision not to make an argument based on the lack of probable cause was not objectively unreasonable. Furthermore, there is not a reasonable probability that the outcome of Harris's appeal would have been different had appellate counsel made the argument. The Seventh Circuit affirmed Harris's conviction and rejected his argument that his statement was involuntary. There is nothing in the record to suggest that the Seventh Circuit's ruling upholding the trial court's determination that the "district court did not believe Harris" (*USA v. Harris*, No. 04-3601, slip op. at 5 (7th Cir. Nov. 21, 2005)) would be different on the issue of probable cause.

Harris argues that his appellate counsel was ineffective for failing to file his appeal *in forma pauperis*. Harris has failed to demonstrate any prejudice from his appellate counsel's not filing his

appeal *in forma pauperis*. The Court fully advised Harris of his right to file an appeal *in forma pauperis* at his sentencing, and Harris acknowledged that he understood this right. Furthermore, appellate counsel was appointed to Harris under the Criminal Justice Act, as would have occurred if he had filed *in forma pauperis*.

Lastly, as to Harris's ineffective-assistance-of-appellate-counsel arguments, Harris argues that his appellate counsel was ineffective for failing to challenge his sentence on the basis that the Sentencing Guidelines are advisory and not mandatory.

At sentencing the Court acknowledged the then-pending issue regarding the constitutionality of the Sentencing Guidelines and resolved the ambiguity in Harris's favor. In addition, the Court specifically noted that it was sentencing Harris to the statutory maximum based on Harris's background and the circumstances of the commission of the crime. Nothing in the record indicates that the Court would have sentenced Harris any differently had the Sentencing Guidelines been advisory at the time of his sentencing. It was wholly reasonable for appellate counsel to forego any argument concerning the status of the Sentencing Guidelines. Furthermore, Harris cannot demonstrate that the outcome of his appeal would have been any different had appellate counsel made the argument.

Harris also argues that one of the jury instructions violated his constitutional rights. Based on the single statement made by Harris in his motion, it appears that Harris is challenging the jury instruction regarding the government's burden of proof beyond a reasonable doubt. Harris did not raise any issues regarding jury instructions on direct appeal. Accordingly, he is barred from raising the challenge in his Section 2255 motion. *See Massaro*, 123 S. Ct. at 1963. Furthermore, even if

Harris could raise the issue, it is without merit. At trial, the jury was instructed on the burden of proof pursuant to the Seventh Circuit Jury Instructions (1999). Harris has failed to show how this pattern instruction misled the jury as to the government's burden of proof.

For the foregoing reasons, Harris's motion to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255, is denied.

Dated: January 25, 2007

JOHN W. DARRAH
United States District Court Judge